UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sarail A., | File No. 25-cv-2144 (ECT/JFD) |
| Petitioner, | |
| v. | **OPINION AND ORDER** |
| Pam Bondi, *Attorney General*, Lisa Monaco, *US Attorney General*, Kristi Noem, *Secretary of Department of Homeland Security*, Peter Berg, *Field Office Director for the Minneapolis Field Office*, Warden, *of Freeborn County Detention Center*, | |
| Respondents. | |

---

Nicholas Ratkowski, Ratkowski Law PLLC, Saint Paul, MN, for Petitioner Sarail A.

Ana H. Voss and Liles Harvey Repp, United States Attorney's Office, Minneapolis, MN for Respondents Pam Bondi, Lisa Monaco, Kristi Noem, and Peter Berg.

---

Petitioner Sarail A. is in the custody of Immigration and Customs Enforcement at the Freeborn County Detention Center. He seeks a writ of habeas corpus. In a Report and Recommendation (or "R&R"), Magistrate Judge John F. Docherty recommended granting Sarail's petition, denying his requests for injunctive relief, and terminating Lisa Monaco as a respondent in this case. ECF No. 9 at 8. Respondents[1] objected to the R&R to the extent it recommends granting Sarail's habeas petition. ECF No. 10. The objection will

---

[1] "Respondents" refers to the Attorney General, the Secretary of the Department of Homeland Security, and the Minnesota-based ICE Field Office Director. The term does not include the Freeborn County Detention Center's warden.

be overruled, and the R&R will be accepted because it has the better interpretation of the governing legal authorities.[2]

I

On July 16, 2010, Sarail pleaded guilty to possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). ECF No. 5 ¶ 7; ECF No. 6-1 at 1. He was sentenced to 144 months in prison. ECF No. 5 ¶ 7; ECF No. 6-1 at 2. In June 2017, he was served with a Notice of Intent to Issue a Final Order, Form I-851, charging removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act, and he was arrested upon his release. ECF No. 5 ¶¶ 9–10; ECF No. 6-2 at 1; *see* 8 U.S.C. § 1227(a)(2)(A)(iii). On August 18, 2017, a designated official ordered Sarail removed from the United States. ECF No. 5 ¶ 11; *see* ECF No. 6-3 at 1.

Sarail was detained for the next three years as ICE attempted to remove him. Sarail represented to ICE that he was a Canadian citizen born in Scarborough, Ontario, to a Jamaican mother. ECF No 1 ¶ 11; ECF No. 5 ¶ 5; ECF No. 6-5 at 2. On October 26, 2017, ICE contacted the Office of the Registrar General in Ontario, which responded that it had no record of Sarail's birth in Ontario, Canada. ECF No. 5 ¶ 12. On February 1, 2018, ICE mailed a letter to the Consulate of Jamaica formally requesting a travel document for Sarail,

---

[2]   Respondents made clear that they did "not object to the R&R[']s recommendation that the Petition's requests for injunctive relief be denied or that . . . Respondent Monaco be terminated as a respondent in this case." ECF No. 10 at 2 n.2. Because as to these issues there is no objection or clear error, *see* Fed. R. Civ. P. 72(b); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam), Monaco will be terminated as a respondent, and Sarail's requests for injunctive relief will be denied.

but ICE received no response. *Id.* ¶ 13. ICE continued to detain Sarail until November 23, 2020, when it released him on an Order of Supervision in compliance with *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *vacated*, 2022 WL 20212706 (C.D. Cal. Sep. 16, 2022). ECF No. 5 ¶ 14. The record does not show Sarail's conditions of release, though ICE claims Sarail "failed to complete his required biometric check-in" on four occasions. *Id.* ¶¶ 15–18 (October 26, 2023; November 9, 2023; December 7, 2023; April 10, 2025).

On May 6, 2025, ICE issued a Notice of Revocation of Release, notifying Sarail that his release had been revoked and that he would be re-detained in ICE Custody. *Id.* ¶¶ 19–20; ECF No. 6-3. The Notice reads in relevant part,

> This [detention] decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.
>
> \*    \*    \*
>
> Based on the above, and pursuant to 8 CFR 241.4, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely.

ECF No. 6-3 at 1. On May 6, 2025, ICE provided Sarail an informal interview "in order to afford [him] an opportunity to respond to the reasons for revocation of his order of supervision stated in the [Notice]." ECF No. 6-4 at 1. According to ICE's notes from the interview, Sarail said "he just wants to go back home to Canada." *Id.* Sarail's handwritten

3

"Custody Review Questionnaire" from the informal interview stresses the same point—he wants to return to his claimed hometown in Ontario.  ECF No. 6 ¶ 5; ECF No. 6-5 at 1–2.  The questionnaire does not indicate any specific change in circumstance that ICE relied on in deciding to revoke Sarail's release.  *See* ECF No. 6-5 at 1–2.

On May 19, 2025, Sarail filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1 ¶ 3.  He seeks relief on three grounds: (1) that ICE has detained him without due process, *id.* ¶¶ 22–24; (2) that his detention violates the Administrative Procedure Act, *id.* ¶¶ 25–26; and (3) that he is entitled to a preliminary injunction and temporary restraining order, enjoining Respondents from re-detaining him without court approval, *id.* ¶¶ 27–32.  He also requests attorneys' fees and costs under the Equal Access to Justice Act.  *Id.* at 11.

After the habeas petition was filed, on May 29, ICE received guidance that "Jamaica is now cooperating with ICE to issue travel documents."  ECF No. 5 ¶ 22.  ICE has requested a query be conducted for Sarail's Jamaican birth certificate.  *Id.* ¶ 23.  Regardless, no record evidence establishes that Sarail is a Jamaican citizen.

On August 29, 2025, attorney Nicholas Ratkowski appeared in this case, representing Sarail, and filed a motion for a temporary restraining order and a motion for expedited relief.  *See* ECF Nos. 11, 12, 13.  The temporary restraining order seeks Sarail's "immediate release from custody."  ECF No. 14 at 18.

II

A

Under 28 U.S.C. § 2241, federal courts have jurisdiction to order the release of a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This authority includes the release of detained noncitizens when ICE fails to follow its own regulations. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 165 (W.D.N.Y. 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. 2017); *Mohammed H. v. Trump*, 781 F. Supp. 3d 886, 896 (D. Minn. 2025). Agencies must follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Webster v. Doe*, 486 U.S. 592, 602 n.7 (1988).

ICE's implementing regulations "establish[] special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period." 8 C.F.R. § 241.13(a). Section 241.13 applies "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." *Id.*

When an individual is released pursuant to § 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, "[t]he Service[3] may revoke an alien's release under this

---

[3] The "Service" formerly referred to the Immigration and Naturalization Service, since dissolved. Its functions under this regulation are now performed by ICE. *See Fuentes-Pena v. Barr*, 917 F.3d 827, 830–31 (5th Cir. 2019).

section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In either case—violation of supervised release or changed circumstances—the regulations require ICE to notify the alien "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

B

Judge Docherty recommended granting the petition for failure to comply with § 241.13(i). The regulation required ICE to notify Sarail of the reasons for revocation of release, but "the Notice did not inform Petitioner what the changed circumstances were"; it merely cited "changed circumstances" without any explanation. ECF No. 9 at 5. As Judge Docherty explained,

> Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3). Thus, while an informal interview apparently

6

>occurred, Petitioner could not have responded to the reasons for revocation, because they were not given.

*Id.* Put another way, Judge Docherty distinguished between the "*reasons* for revocation" mentioned in § 241.13(i)(3) and the *categories* of revocation listed in § 241.13(i)(1) and (2). In Judge Docherty's view, ICE identified the category—"changed circumstances"—but failed to notify Sarail of the reason—the circumstances that changed and created a significant likelihood of removal in the reasonably foreseeable future—so it failed to follow the relevant regulation.

Judge Docherty further concluded that Respondents "failed to show that ICE properly determined . . . that Petitioner's removal is significantly likely in the reasonably foreseeable future." ECF No. 9 at 6–7. Relying on a First Circuit decision, Judge Docherty reasoned that ICE should have considered the § 241.13(f) factors in making this determination. *Id.* at 7 (citing *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)). As *Kong* explained, "Section 241.13 governs how ICE should determine whether there is a significant likelihood of removing a noncitizen in the reasonably foreseeable future. Subsection (f) details several factors that ICE must consider in making the foreseeability inquiry." *Kong*, 62 F.4th at 620 n.13. Those factors are:

>the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

7

8 C.F.R. § 241.13(f). In Judge Docherty's view, then, ICE failed to follow its regulations in two ways: by not notifying Sarail of the reason for revoking his release, and by not properly determining that Sarail was likely to be removed in the first place. *See Kong*, 62 F.4th at 620 ("To the extent ICE claims it made [a foreseeability of removal] determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination.").

C

Respondents raise four objections to the R&R. First, "Respondents object to the R&R's conclusion that the agency's Notice of Revocation of Release was insufficient under 8 C.F.R. § 241.14(i)."[4] ECF No. 10 at 2 (citation omitted). Second, and relatedly, they "object to the R&R's conclusion that additional information was required 'in order [for Petitioner] for meaningfully respond to the reasons and submit evidence in opposition as allowed under § 241.13(i)(3),' or that absent such information, 'Petitioner did not have a meaningful opportunity to respond' at his informal interview." *Id.* at 3 (quoting ECF No. 9 at 5–6). Third, "Respondents therefore respectfully object to the conclusion that Petitioner was not but should have been afforded an evaluation and determination of contested facts during his informal interview." *Id.* at 4–5. And fourth, they "object to the R&R's conclusion that Respondents 'have . . . failed to show that ICE properly determined—either before the Notice was issued or more recently—that Petitioner's removal is significantly likely in the reasonably foreseeable future.'" ECF No. 10 at 5

---

[4] The reference to § 241.14(i) is presumably a typo. The correct regulation is 8 C.F.R. § 241.13(i).

(quoting ECF No. 9 at 6–7). Respondents argue that the § 241.13(f) factors should not apply to the § 241.13(i)(2) determination whether there is a significant likelihood of removal in the reasonably foreseeable future.

The first three objections hinge on the interpretation of "reasons" in § 241.13(i)(3). Respondents' position is that the reason for Sarail's revocation was a change in circumstances, period. ECF No. 10 at 3. "ICE's determination regarding a significant likelihood of removal in the reasonably foreseeable future . . . *is its reason for revocation*— indeed it is one of the two potential reasons articulated in" the regulation. *Id.* (emphasis added). As Respondents argue, the regulation "adds no requirement that ICE also notify Petitioner, '*what* circumstances had changed or *why*' ICE made its determination." *Id.* (quoting ECF No. 9 at 5). They find support in the *expressio unius* canon, arguing that if the regulation intended to require it to consider specific facts, it would have mentioned them in § 241.13(i)(3). *Id.* (citing *Watt v. GMAC Mortg. Corp.*, 457 F.3d 781, 783 (8th Cir. 2006)).

This argument is not convincing. Judge Docherty correctly concluded that notification "of the reasons for revocation" requires ICE to do more than state that circumstances have changed. *See* ECF No. 9 at 5 (citing 8 C.F.R. § 241.13(i)(3)). His interpretation is supported by the regulation's text, the regulatory context, canons of construction, and case law.

Start with the regulation's plain text. *See Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 974 (8th Cir. 2011). "Reason" in the relevant sense is not a legal term of art, and ordinary-language dictionaries and law

9

dictionaries give similar definitions. *Black's Law Dictionary* defines "reason" as "[a]n expression or statement given by way of explanation or justification; whatever is supposed or affirmed to support a conclusion, inference, or plan of action," and "[a] ground or cause that explains or accounts for something."[5] *Reason*, *Black's Law Dictionary* (12th ed. 2024). Ordinary-language dictionaries define "reason" as "a statement offered in explanation or justification," "a rational ground or motive," "the thing that makes some fact intelligible," *Reason*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003), and as "[a] fact or circumstance forming a motive sufficient to lead a person to adopt or reject some course of action," *Reason*, *The New Shorter Oxford English Dictionary* (4th ed. 1993). Common to all these definitions is the idea that a reason is what makes an action intelligible, accounted for, or explained. In the regulation, then, the "reasons for revocation" should explain ICE's course of action. 8 C.F.R. § 241.13(i)(3). Stating that circumstances have changed, without mentioning what circumstances changed in which ways, does not explain or account for an action.

Reading the regulation in context leads to the same conclusion. *Cf. Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021) ("When interpreting a statute, we must also consider the statutory context in which the words in question appear, including both the specific context in which the language is used,

---

[5] The Final Rule using the language "reasons for revocation" was adopted in 2000. *See* 65 Fed. Reg. 80281-01, 80298 (Dec. 21, 2000), 2000 WL 1860526. The seventh edition of *Black's Law Dictionary*, published in 1999, does not define "reason." The sixth edition does, and there, "reason" is "an inducement, motive, or ground for action." *Reason*, *Black's Law Dictionary* (6th ed. 1990). This definition accords with those in later editions of *Black's Law Dictionary* and in non-legal dictionaries.

10

and the broader context of the statute as a whole." (citation modified)).  The only other instances of "reason" or "reasons" in the provision occur in subsections (a) and (e).  Subsection (a) states that the regulation applies "where the alien has provided good *reason* to believe there is no significant likelihood of removal to the country to which he or she was ordered removed."  8 C.F.R. § 241.13(a) (emphasis added).  Subsection (e) states that, when the Service's Headquarters Post-order Detention Unit initially determines whether removal is likely, an "alien may provide any additional relevant information to the Service, including *reasons* why his or her removal would not be significantly likely in the reasonably foreseeable future even though the Service has generally been able to accomplish the removal of other aliens to the particular country."  8 C.F.R. § 241.13(e) (emphasis added).  In these provisions, "reason" and "reasons" refer to "relevant information" that justifies a conclusion.  8 C.F.R. § 241.13(e).  Under the canon presuming consistent usage, a court "presume[s] that identical words used in different parts of the same statute have the same meaning unless the text or context suggests otherwise."  *United States v. Pulsifer*, 39 F.4th 1018, 1022 (8th Cir. 2022).  Here text and context do not suggest otherwise: Subsections (a), (e), and (i)(3) use "reason" or "reasons" to mean facts probative of the likelihood of future removal.

Similarly, as Judge Docherty explained, § 241.13(i)(3)'s procedural requirements make little sense if "reasons for revocation" can be met just by a reference to "change in circumstances."  ECF No. 9 at 5 ("Petitioner could not have responded to the reasons for revocation, because they were not given.").  Under Respondents' view, Sarail had the opportunity to submit evidence and information showing there was no significant

11

likelihood of removal in the reasonably foreseeable future, and that "such information . . . is not contingent on ICE's own . . . analysis. ECF No. 10 at 3–4 (citing 8 C.F.R. § 241.13(i)(3)). But the regulation reads, "The Service will conduct an initial informal interview promptly after [the alien's] return to Service custody *to afford the alien opportunity to respond to the reasons for revocation stated in the notification*." 8 C.F.R. § 241.13(i)(3) (emphasis added). The purpose of the interview, in other words, is to allow the petitioner to respond to reasons *already* given—without those reasons, the petitioner has no way to know what evidence or information is responsive.

Federal Respondents argue that the canon of *expressio unius est exclusio alterius* supports its interpretation. *See* ECF No. 10 at 3. Their argument is that the regulation requires ICE to notify Sarail that changed circumstances make his removal likely, and if it had required ICE to notify Sarail "*what* circumstances had changed or *why*" ICE made its revocation decision, "those additional details . . . would have been included among the regulation's notice requirement." *Id*. In other words, the term "changed circumstances" excludes other terms not expressed. This argument misapplies the canon. "The doctrine properly applies only when the *unius* (or technically, *unum*, the thing specified) can reasonably be thought to be an expression of *all* that shares in the grant or prohibition involved." Antonin Scalia & Bryan A. Garner*, Reading Law: The Interpretation of Legal Texts* 107 (2012). On the other hand, when "contrary indications" exist showing that a word "was probably not meant to signal any exclusion of its common relatives," the canon does not apply. *United States v. Vonn*, 535 U.S. 55, 65 (2002). Here, it is not plausible that the term "changed circumstances" excludes specific changes in circumstance. That's

12

largely for the reasons discussed with respect to plain language and regulatory context; those are "contrary indications" suggesting that *expressio unius* is not in play. *See Vonn*, 535 U.S. at 65. The context works in the opposite direction—rather than imply that specific changes in circumstance are excluded, the regulation's other uses of "reason" or "reasons" and the procedural provisions strongly suggest that ICE must provide specific facts relevant to its determination. Because "changed circumstances" cannot be reasonably understood as excluding specific changes in circumstance, the canon does not support Respondents' interpretation.

Persuasive case law points in the same direction. Every case we have found discussing the "reasons for revocation" treats them as the specific facts supporting ICE's decision. For example, in *Nguyen v. Hyde*, the district court order a petitioner released after ICE offered "no statistics or supporting facts" in the notice of revocation supporting a change of circumstances showing a significant likelihood of removal in the reasonably foreseeable future. *See* --- F. Supp. 3d ---, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025). The Respondents offered only "conclusory" assertions, which failed to satisfy the regulatory elements. *Id.* In *Liu v. Carter*, the court went further—ICE's proposed reason for revocation was "an increase in successful repatriations to the People's Republic of China in 2024," but that explanation was "insufficient," as it did not address specific information that the petitioner was likely to be removed. No. 25-3036-JWL, 2025 WL 1696526, at *1–2 (D. Kan. June 17, 2025). Lacking that information, the court could not decide "whether any changed circumstances led officials to determine that there is a significant likelihood that petitioner may be removed in the reasonably foreseeable future,

13

as required by Section 241.13(i)." *Id.* at *2. The court read § 241.13(i)(3) to "require[] officials to notify an alien of the *supporting* reasons"—construing the statutory text in the same way outlined above. *Id.* In *Roble v. Bondi*, another judge in this District reached the same conclusion: "Providing a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the 'reasons' why [the petitioner's] Order of Supervision was revoked." 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025). And courts have denied petitioners' requests for relief when the reasons for revocation were "legitimate"—that is, the change in circumstances was factual and supported a likely removal. *See Bailey v. Lynch*, No. 16-2600 (JLL), 2016 WL 5791407, at *4 (D.N.J. Oct. 3, 2016). The judicial review in *Nguyen*, *Liu*, *Roble*, and *Bailey* presumes that § 241.13(i)(3) requires ICE to make more than conclusory assertions about changed circumstances. Other cases support the same point. *See Kong*, 62 F.4th at 620 n.13; *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025); *Ashqar v. LaRose*, No. 4:18 CV 1141, 2019 WL 1793000, at *11 (N.D. Ohio Mar. 26, 2019). Respondents have not cited a case interpreting "reasons for revocation" in the way they advocate. *See* ECF No. 10.

This analysis is enough to overrule Respondents' first, second, and third objections. Regarding the first objection, the Notice was insufficient under § 241.13(i)(3). As to the second, the R&R was right to conclude that ICE's insufficient Notice deprived Sarail of the opportunity to meaningfully respond. And with respect to the third objection, § 241.13(i)(3) requires ICE to provide alien an opportunity to respond to the reasons for revocation stated in the notice, allow the alien the chance to submit evidence in opposition,

14

and evaluate contested facts. Because ICE provided insufficient Notice, it failed to comply with the subsequent procedural requirements as well.

Respondents' fourth objection requires additional analysis. To recap, this objection is to the R&R's conclusion that Respondents "failed to show that ICE properly determined—either before the Notice was issued or more recently—that Petitioner's removal is significantly likely in the reasonably foreseeable future." ECF No. 10 at 5 (quoting ECF No. 9 at 6–7). Respondents object that ICE's determination "is not presently before the Court" because "the Petition lacked any argument that Petitioner's removal was not significantly likely in the reasonably foreseeable future." *Id.* In their view, that fact distinguishes this case from *Kong*, where the plaintiff argued that the Government failed to meet the requirements of § 241.13(i)(2). *See id.* (citing *Kong*, 62 F.4th at 610). Additionally, Respondents argue that—if jurisdiction does exist—it was incorrect for the R&R to import the § 241.13(f) factors into § 241.13(i)(2), as the court did in *Kong*. *See* ECF No. 10 at 6. Respondents note that the Eighth Circuit has not ruled on this question and argue that subsection (f) concerns procedures after a petitioner makes an initial showing that no changed circumstances exist, whereas Sarail made no such showing. *Id.*

This objection will be overruled. In his request for injunctive relief, Sarail challenged the correctness of ICE's underlying justification for revocation, albeit not as directly as a represented petitioner might. He accurately stated the law, claiming that he could be re-detained under the regulation only if he violated a release condition or changed circumstances showed a significant likelihood that he would be removed in the reasonably foreseeable future. *See* ECF No. 1 ¶ 30. He then alleged that his "current detention [was]

15

unlawful." *Id.* Liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Sarail alleged he was likely to win on the merits over whether there was a significant likelihood that he would be released in the reasonably foreseeable future. That claim implies ICE incorrectly determined that changed circumstances made his removal likely.

The R&R also correctly concluded that ICE failed to properly determine a significant likelihood of removal in the reasonably foreseeable future. The text requires ICE to "determine[]" the likelihood of removal, which implies considering factors probative of the alien's future removal. *See* 8 C.F.R. § 241.13(i)(2); *Bailey*, 2016 WL 5791407, at *4 (reasoning that "release was thus revoked based on a *legitimate* change in circumstances (emphasis added)). The regulation's only provision discussing whether a likelihood-of-removal determination is proper is subsection (f), which directs officials to consider a non-exhaustive list of factors, including the alien's history of compliance efforts, ICE's history in removing aliens to the country in question or third countries, and the State Department's views on the prospects of removal of aliens to those countries. *See* 8 C.F.R. § 241.13(f). While Respondents are correct that a subsection (f) determination is part of a more complicated procedure than that described in subsection (i), it's difficult to see why that matters. Subsection (f) simply instructs ICE to consider certain factors, while the more onerous procedural requirements exist in subsections (e) (reviewing alien's request and documents) and (g) (issuing a written decision). If certain factors are not relevant in a particular subsection (i)(2) determination, it would be easy to say. Though it's true the Eighth Circuit has not reached this issue, Respondents cite no case that rejects the application of subsection (f) in a subsection (i)(2) determination, and all the persuasive

16

authorities seem to accept the application. *See Kong*, 62 F.4th at 619–20; *Nguyen*, 2025 WL 1725791, at *3; *Hoac*, 2025 WL 1993771, at *3; *Phan v. Becerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1808702, at *4 (E.D. Cal. June 30, 2025).

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Respondents' Objections [ECF No. 10] to the Report and Recommendation [ECF No. 9] are **OVERRULED**.

2. The Report and Recommendation [ECF No. 9] is **ACCEPTED**.

3. Petitioner Sarail A.'s Emergency Motion or Request for Expedited Handling [ECF No. 12] is **GRANTED**.

4. Petitioner Sarail A.'s petition for a writ of habeas corpus [ECF No. 1] is **GRANTED** in that Petitioner shall be released from custody, subject to the conditions in the prior order of supervision.

5. Petitioner Sarail A.'s Emergency Motion for Temporary Restraining Order [ECF No. 13] is **GRANTED**. To the extent Petitioner Sarail A. seeks Respondents to be enjoined from re-detaining him, his requests for injunctive relief are **DENIED**.

6. Lisa Monaco is terminated as a respondent in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 3, 2025

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court